UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SADIA ROBINSON,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 17-cv-00126-DMR<br><br>**ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 22, 28 |

Pro se Plaintiff Sadia Robinson moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants the Commissioner's motion and denies Robinson's motion.

## I. PROCEDURAL HISTORY

Robinson filed an application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits on January 31, 2013, alleging disability beginning July 15, 2012. Administrative Record ("A.R.") 177-86, 224-227. Her application was initially denied on May 28, 2013 and again on reconsideration on October 25, 2013. A.R. 108-112, 116-120. On January 30, 2014, Robinson filed a request for a hearing before an Administrative Law Judge ("ALJ"). ALJ Philip Callis held a hearing on May 22, 2014. A.R. 27-71. Robinson appeared at the hearing without the assistance of counsel. A.R. 30-33.

After the hearing, the case was reassigned to ALJ Michael Blume. *See* A.R. 9. ALJ Blume issued a decision finding Robinson not disabled. A.R. 6-20. The ALJ determined that Robinson has the following severe impairments: rheumatoid arthritis, fibromyalgia, and obesity. A.R. 12.

The ALJ found that Robinson retains the following residual functional capacity ("RFC"):
> The claimant has the residual functional capacity to perform at least light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with occasional exposure to unprotected heights and work around heavy machinery.

A.R. 14.

The ALJ concluded that Robinson is able to perform her past work as office clerk and cashier, both as she performed the work and as it is generally performed. A.R. 18. Additionally, the ALJ relied on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the national economy, including order clerk and small products assembler. The ALJ concluded that Robinson is not disabled. A.R. 19.

The Appeals Council denied Robinson's request for review on November 4, 2016. A.R. 1-4. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Robinson then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

    3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

    4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

    5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

## III. FACTUAL BACKGROUND

### A. Robinson's Testimony

Robinson testified that she last tried to work in January 2014 as a cashier in the bookstore at Los Medanos Community College. She was only able to work four to six days at that job due to her physical condition and had to go home early most days. She stated that she had a stool to sit on, but that when she sits, her knees and feet swell and then go numb, and her wrists swell when she removes her wrist braces. A.R. 43-44. Robinson feels shooting, tingling pains from her neck to her toes and her medication makes her drowsy. A.R. 45. Robinson had previously held an office job at Los Medanos for two years, which she left in 2012 when her health deteriorated. A.R. 47-49.

In 2013, after her alleged disability onset date, Robinson earned $1,343.85 from

employment at Los Medanos. She also reported self-employment income of $13,390 from dog-sitting. A.R. 50-51. While dog-sitting, she cared for one to two dogs per day at her home. A.R. 51-52. She stopped dog-sitting in 2014 because of her difficulty moving around. A.R. 53-54.

Robinson lives in an apartment with her 13 year old daughter. A.R. 53, 55. She testified that she occasionally drives her daughter to and from school in her own car. A.R. 55, 56. When she is with her daughter, they spend time talking and watching TV or movies, and Robinson occasionally watches her daughter practice volleyball if Robinson feels able to go outside. A.R. 56-57. While her daughter is in school, Robinson rests and tries to clean her apartment. She has difficulty lifting, so does only light laundry. A.R. 57. She testified that her daughter has taken on the majority of responsibilities and helps her shop for groceries. A.R. 55, 58. Robinson drives or takes the bus to doctor's appointments. A.R. 56.

Robinson testified that her main medical problems are rheumatoid arthritis and fibromyalgia. A.R. 59-60. When asked if there is "any kind of work in the economy that [she] can do now on a sustained, 40-hour a week basis," Robinson responded, "[i]f I can work for myself, yes. . . . because every day is not the same." A.R. 62. However, she stated that she cannot work a job in "just a normal society." A.R. 62. Robinson also testified that if she tried to work 40 hours per week, she would not be able to take care of her daughter, who is her first priority. According to Robinson, "it's either one or the other." A.R. 62.

**B. Pain and Exertion Questionnaires**

Robinson filled out a pain questionnaire on April 17, 2013. A.R. 302-04. Robinson reported that she experiences pain every day in her arms, wrist, legs, feet, ankles, and toes. A.R. 302. She stated that the pain lasts throughout the day, but that it "subsides some [with] [her] medication" and that medication "helps [her] get through after 2 hours." A.R. 302. She also stated that rest relieves the pain after a couple of hours. A.R. 302. Robinson reported side effects of drowsiness, dizziness, and cramping. A.R. 303. She wears wrist braces for both hands, uses a heating pad, and takes hot showers. She noted that household chores and "day to day life is a struggle." A.R. 303. Her usual daily activities are walking and shopping with a mechanical cart, and she reported that she is able to walk for half a mile, sit and stand for 30 minutes at a time,

drive, and perform light housekeeping without assistance. She requires assistance to clean the bathroom, vacuum, wash windows, wash dishes, sweep, and lift. A.R. 304.

On October 24, 2013, Robinson completed an exertion questionnaire. A.R. 314-17. She noted that her rheumatoid arthritis causes her joints to swell so that it hurts to walk or move. A.R. 314. She does not climb stairs unless she has to and can only lift three pounds or less. A.R. 315. Robinson noted that her daughter helps her keep her house clean, noting that it takes her over two hours to wash dishes because she cannot stand for too long. A.R. 315. She can only drive for twenty minutes because it hurts her hands and wrists. She has to drive because she is a single parent and has to take her daughter to school. A.R. 315.

### C. Relevant Medical Evidence

#### 1. 2013-2015 Medical Records

Robinson's medical records show that from 2013 through 2015 Robinson received treatment for rheumatoid arthritis and fibromyalgia from various providers, including physicians Martin Bauman, M.D., David H. Stone, M.D., Midori Nishio, M.D., and Anthony Padula, M.D.

Dr. Bauman, a rheumatologist, saw Robinson in January 2013. A.R. 460-62. He noted that her main complaints were "joint and muscle discomfort for the last 6 to 7 months." She reported pain involving both wrists that increased with movement, and pain in her knees, ankles, and feet. Dr. Bauman discussed her lab results and noted that Robinson had a slightly elevated rheumatoid factor but normal levels on other tests. He examined Robinson and noted synovitis in her fingers and wrist, slightly decreased range of motion in the knees, and some tenderness over her ankles and toes. He diagnosed possible rheumatoid arthritis with an elevated rheumatoid factor. A.R. 461.

Dr. Stone, a rheumatologist, saw Robinson in March, May, and August 2013. A.R. 423-26, 472-73. In March 2013, Dr. Stone noted that Robinson reported early morning stiffness for half an hour or more. She also stated that her joints were intermittently swollen and tender, including her hands, wrist, knees, and toes. Dr. Stone noted that Robinson had started taking medication for rheumatoid arthritis but that her labs were "all reassuring," and that she had only a mildly elevated rheumatoid factor. He noted some puffiness in her hands but no clear evidence of

synovitis. He also noted Robinson's report that her hands were not as swollen "as they can be at times." He diagnosed possible seronegative rheumatoid arthritis, but wrote that he was "not completely convinced that this is rheumatoid arthritis," and that it was possible Robinson had "fibromyalgia and some osteoarthritis." A.R. 423. In May 2013, Dr. Stone noted that Robinson had reported some improvement with medication, although she reported significant early morning stiffness. He noted that Robinson's rheumatoid factor was again only mildly elevated and that despite some puffiness in her extremities, she had no synovitis. A.R. 425. In August 2013, Dr. Stone noted that Robinson had responded to medication, and while acknowledging his previous uncertainty about her diagnosis, stated "I do think that it is a rheumatoid arthritis at this time and once again, she does have an elevated rheumatoid factor." A.R. 472.

Dr. Nishio treated Robinson in November 2013 and February and April 2014. A.R. 610-20. In November 2013, Dr. Nishio noted that Robinson had just started Enbrel injections which made a difference, but that Robinson felt "more fatigued than she used to be." A.R. 610. She reported morning stiffness for about one hour and swelling and a "tingly sensation" in her forearms, knees, and feet. According to Dr. Nishio, Robinson's "limiting issues are being tired, having to rest more as well as inability to handle small objects (she can't write as well)." A.R. 610. Dr. Nishio reported no synovitis or deformity in her hands but tenderness in her joints. Her elbows, hips, knees, ankles, and forefeet were within normal limits but her ankles were tender to palpation. A.R. 611. Dr. Nishio diagnosed possible rheumatoid arthritis and definite fibromyalgia. A.R. 612. In February 2014, Dr. Nishio noted Robinson's report of pain in her left shoulder and left neck. Robinson reported that she thought "her Enbrel is working in general," and reported improvement in her dorsal feet. According to Robinson, she still had "flares" about three times per week, where she had had them every day. A.R. 615. Dr. Nishio noted that her hands showed no synovitis or deformity although her small joints were tender. A.R. 615. In April 2014, Robinson reported to Dr. Nishio that her hands felt "a little weak" and swollen and her feet hurt. Her hands showed no synovitis, tenderness, or deformity. A.R. 619. Dr. Nishio noted that a March 2014 MRI of her hand was "completely normal" and that there was "no evidence of prior or current [rheumatoid arthritis]." A.R. 620. Dr. Nishio wrote that she was not convinced that

6

Robinson had inflammatory arthritis, but that she had fibromyalgia and soft tissue rheumatism. A.R. 620.

Robinson was treated by Dr. Padula in 2014 and 2015, who consistently diagnosed her with rheumatoid arthritis. A.R. 670-692. In September 2014, Dr. Padula noted that Robinson's pain was in both wrists and hands. The pain was persistent and Robinson described the problem as worsening, but that medication relieved the pain. She was also experiencing fatigue, joint swelling, and morning stiffness. A.R. 685. Later in September 2014, Robinson reported ongoing pain and swelling in her hands, arms, and legs. A.R. 682.

In November 2014, Dr. Padula noted that Robinson reported being "more swol[l]en after going out with friends," but that she was having more good days. A.R. 679. An examination revealed swelling in her hands, wrists, and knees, and tenderness in her feet and ankles. A.R. 680. He diagnosed chronic rheumatoid arthritis. In December 2014, Dr. Padula noted Robinson's "ongoing daily pain." A.R. 676. He noted swelling in her hands, while her shoulders, elbows, knees, feet, and ankles were normal, with no tenderness, swelling, effusion, or limitation to range of motion. A.R. 677.

In January 2015, Dr. Padula noted that Robinson reported increased pain in her hands and feet. A.R. 673. She had swelling in her hands and wrists and tenderness in her feet and ankles. A.R. 674. In March 2015, Robinson complained of some pain in her right wrist and hand, and complained of feeling fatigued and "achy." A.R. 670. An examination revealed swelling in her hands, with no limitation to range of motion in her shoulders, elbows, knees, feet, and ankles. A.R. 671. Dr. Padula diagnosed rheumatoid arthritis, unspecified myalgia and myositis, and carpal tunnel syndrome. A.R. 671.

### 2. Consultative Examiner Edie Glantz, M.D.

Edie Glantz, M.D., a neurologist, performed a consultative examination on October 21, 2014. A.R. 631-641. Dr. Glantz reviewed Robinson's records and noted her diagnoses of possible rheumatoid arthritis and fibromyalgia with chronic pain. A.R. 631, 637. With respect to rheumatoid arthritis, Dr. Glantz noted that in 2012, she had a slightly elevated rheumatoid factor while other tests were normal. After starting treatment for rheumatoid arthritis, including

7

medication and injections, she had an MRI of her hands in February 2013, which was normal. Dr. Glantz noted that Robinson's rheumatologist did not believe that she had inflammatory arthritis and believed that she should be weaned off of immunosuppressive medication and treated for pain. A.R. 637.

Robinson reported to Dr. Glantz that her pain "is a little bit better" with medication, but that "any prolonged activity or position aggravates her pain which is chronic and constant anyway." She feels pain in her feet, toes, hands, wrists, left trapezius, both knees, and shoulder. A.R. 638. Robinson reported to Dr. Glantz that although she does her own dressing and grooming, her daughter helps her wash herself when showering. She does some dishes, laundry, mopping, vacuuming, "limited cooking," and grocery shopping in a motorized cart. She drives short distances and walks for 30 minutes to an hour every other day. She watches TV for most of the day due to fatigue. A.R. 638.

Dr. Glantz noted that Robinson got up and off of the exam table and chair without using her arms but complained of pain. A.R. 638-639. She was able to manipulate small items independently but complained of pain in her hands and feet while sitting and moving around the room. A.R. 639. Robinson had a normal gait. A.R. 639. Dr. Glantz noted that Robinson had "diffuse pain to even the lightest touch" at various parts of her body, but no joint deformities, effusions, or swelling. She had full range of motion and full motor strength at all extremities. A.R. 640.

Dr. Glantz diagnosed possible rheumatoid arthritis and fibromyalgia. A.R. 641. She opined that Robinson can frequently and continuously lift and carry up to 10 pounds, and can occasionally lift and carry up to 20 pounds. A.R. 631. She also opined that Robinson can sit, stand, and walk for one hour at a time without interruption, and can sit, stand, and walk for up to four hours for each activity in an eight-hour workday. A.R. 632.[2] Dr. Glantz opined that Robinson can frequently reach, handle, finger, feel and push/pull with both hands. A.R. 632. Additionally, she opined that Robinson can occasionally climb stairs,raps, ladders, and

---

[2] Elsewhere in her opinion, Dr. Glantz opined that Robinson can sit for up to six hours. A.R. 641. There is no explanation in the opinion for the discrepancy.

8

scaffolds; balance; stoop, kneed; crouch; and crawl. A.R. 634. She also indicated that Robinson should never work around unprotected heights and moving mechanical parts or operate a motor vehicle while taking Norco due to side effects. A.R. 635.

### 3. Medical Expert Edwin Cruz, M.D.

On July 5, 2015, medical expert internist Edwin Cruz, M.D., responded to interrogatories and completed a medical source statement. A.R. 693-705. Dr. Cruz reviewed Robinson's records and noted that multiple physical examinations revealed no "significant joint deformity or instability," and that her rheumatoid arthritis "has been well controlled on the anti-inflammatory agents used and other biologies." A.R. 704. Based on Robinson's subjective complaints and the medical evidence, he opined that she does not meet or equal the listing for inflammatory arthritis. A.R. 704.

Dr. Cruz opined that Robinson can lift and carry up to 10 pounds continuously and up to 20 pounds frequently; sit for two hours and stand and walk for up to one hour at a time; and sit, stand, and walk for up to eight hours per day. A.R. 694-95. He also opined that Robinson can reach, handle, finger, feel, and push/pull with both hands frequently, and operate foot controls with both feet frequently. A.R. 696. Dr. Cruz indicated that Robinson can frequently climb stairs and ramps and continuously balance, stoop, kneel, crouch, and crawl. A.R. 697. He also opined that she can occasionally tolerate exposure to unprotected heights, extreme cold, and vibrations; can frequently tolerate exposure to humidity and wetness and extreme heat; and can continuously tolerate exposure to moving mechanical parts, operating a motor vehicle, and dust, odors, fumes, and pulmonary irritants. A.R. 698. He indicated that Robinson can perform activities such as shopping, traveling alone, ambulating without assistance, and caring for her personal hygiene. A.R. 699.

### 4. State Agency Medical Consultants

J.R. Saphir, M.D., a state agency medical consultant, reviewed medical records and assessed Robinson's medically determinable impairments on May 25, 2013. A.R. 80-87. Dr. Saphir considered her impairments of inflammatory arthritis, a urinary tract disorder, and obesity, and opined that none were severe, and that Robinson did not have a combination of impairments

9

1  that was severe. A.R. 86.

2  On October 24, 2013, a second state agency medical consultant, A. Ahmed, M.D.,
reviewed Robinson's medical records. A.R. 90-97. Dr. Ahmed similarly opined that Robinson's impairments of inflammatory arthritis, a urinary tract disorder, and obesity were non-severe. Dr. Ahmed also opined that Robinson did not have a combination of impairments that was severe. A.R. 95.

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. ISSUES PRESENTED

In her motion for summary judgment, Robinson describes her diagnoses, current symptoms and limitations, and provides a brief summary of her medical history. She challenges some of the medical evidence discussed by the ALJ, including the adequacy of the examinations and diagnoses

10

by two of her treating physicians, Drs. Nishio and Stone, and a March 2015 examination by a third treating physician, Dr. Padula. Robinson also appears to dispute Dr. Cruz's opinions about her functional abilities and the ALJ's determination of her RFC, and challenges the ALJ's discussion of her activities of daily living as well as a Social Security claims representative's observations of Robinson. Pl.'s Mot. 5, 7-8. Ultimately, Robinson challenges the ALJ's conclusion that she is not disabled, asserting that she experiences significant pain that makes it impossible for her to work.

The Ninth Circuit has instructed that courts have "an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The court liberally construes Robinson's motion as a challenge to the ALJ's finding that she has the RFC to perform light work. Specifically, the court construes Robinson's motion as 1) a challenge to the sufficiency of the medical evidence supporting the RFC and 2) a challenge to the ALJ's decision to discount her subjective complaints of pain.

The Commissioner cross-moves to affirm, arguing that the ALJ's decision is supported by substantial evidence and is free of legal error.

## VI. DISCUSSION

### A. Legal Standard Regarding RFC

"In determining the ultimate issue of disability, [the plaintiff] bears the burden of proving she is disabled." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The mere fact that a plaintiff is diagnosed with an impairment is not, by itself, "proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) (an impairment alone is not "per se disabling"; rather, "there must be proof of the impairment's disabling severity") (citation and internal quotation marks omitted).

Social Security regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2. An individual's RFC "is the most [the individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC at

11

step four of the sequential analysis, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also* SSR 96–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments [because] limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do."). The court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. *See id.* (upholding RFC determination where "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints.").

**B. Medical Evidence Supporting the ALJ's RFC Assessment**

The ALJ concluded that Robinson's RFC allows her to perform light work with occasional exposure to unprotected heights and work around heavy machinery. A.R. 12, 14. Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 416.967(b); 20 C.F.R. § 404.1567(b).

As noted, the record contains four medical opinions: the opinion of Dr. Glantz, who examined Robinson; the opinion of the medical expert, Dr. Cruz, who reviewed Robinson's medical records; and the opinions of the state agency medical consultants, Dr. Saphir and Dr. Ahmed, who reviewed the records and opined that Robinson's impairments were non-severe. As

12

to Drs. Saphir and Ahmed, the ALJ accorded their opinions reduced weight, noting that the record and opinion evidence supported a finding that Robinson has a severe impairment. A.R. 16. In fact, the ALJ concluded that Robinson has the severe impairments of rheumatoid arthritis, fibromyalgia, and obesity. A.R. 12.

The ALJ gave greater weight to the opinions of Drs. Glantz and Cruz. Dr. Glantz examined Robinson and reviewed her medical records, and diagnosed her with possible rheumatoid arthritis and fibromyalgia. Noting Robinson's foot pain, she opined that Robinson can sit, stand, and walk for up to four hours per day for each activity. She also concluded that Robinson can lift and carry 20 pounds occasionally and lift and carry ten pounds frequently. According to Dr. Glantz, Robinson can also use her hands frequently and her feet occasionally. The ALJ gave "some weight to Dr. Glantz's opinion for purposes of assessing the [RFC]." The ALJ noted that Dr. Glantz was "an examining source who seems to have carefully examined [Robinson] and explained her findings," and stated that her opinion supported the RFC assessment. A.R. 17, 18.

Similarly, Dr. Cruz opined that Robinson can lift and carry up to 10 pounds continuously and up to 20 pounds frequently; sit for two hours and stand and walk for up to one hour at a time; and sit, stand, and walk for up to eight hours per day. He also opined that Robinson can reach, handle, finger, feel, and push/pull with both hands frequently, and operate foot controls with both feet frequently. The ALJ gave "great weight" to Dr. Cruz's opinion, explaining that Dr. Cruz "is a medical expert, . . . explained his opinion carefully and with citations to the record, and . . . had the advantage of review of the entire record." The ALJ "adopt[ed]" Dr. Cruz's opinion. A.R. 17.

As discussed, the record also contains treatment notes from several of Robinson's treating physicians, including Drs. Bauman, Stone, Nishio, and Padula. Notably, the record does not contain any evaluations by Robinson's treating physicians regarding her functional limitations or ability to perform work-related physical activities. In fact, the only notation in the treatment notes about any functional limitation is a November 2013 note by Dr. Nishio that Robinson's "limiting issues are being tired, having to rest more as well as inability to handle small objects (she can't write as well)." A.R. 610. However, Dr. Nishio did not offer an opinion about how these

13

limitations would impact her ability to work. In other words, the record contains no medical opinions by treating providers that contradict the opinions of Drs. Glantz and Cruz about Robinson's ability to perform light work. Therefore, the court finds that the opinions of Drs. Glantz and Cruz constitute substantial evidence supporting the ALJ's determination of Robinson's RFC.

In her motion, Robinson states that she "disagrees with" the "record[s]" of Drs. Stone and Nishio. Pl.'s Mot. 5. With respect to Dr. Stone, Robinson cites the ALJ's discussion of Dr. Stone's March 2013 treatment notes, in which Dr. Stone noted that he was "not completely convinced" that Robinson had rheumatoid arthritis. A.R. 15, 423. Similarly, Robinson appears to take issue with Dr. Nishio's statement that she was not convinced that Robinson had inflammatory arthritis, but that she had fibromyalgia and soft tissue rheumatism. A.R. 16, 620. According to Robinson, neither doctor performed "thorough treatments." Robinson contends that Dr. Nishio did not perform a Vectra test to confirm rheumatoid arthritis, and that Dr. Stone "presumed in his mind that" Robinson simply wanted medication. Pl.'s Mot. 7. To the extent that Robinson's position is that Drs. Stone and Nishio erred in their diagnoses, Robinson does not explain how the ALJ's discussion of these doctors' treatment notes constituted error. Moreover, any misdiagnosis by those physicians is not relevant because the ALJ actually found that Robinson had the severe impairments of rheumatoid arthritis and fibromyalgia.

Robinson next challenges the March 2015 physical examination by Dr. Padula. Pl.'s Mot. 5. As the ALJ noted, Dr. Padula's March 2015 examination of Robinson showed swelling to the bilateral fingers, but otherwise no tenderness or swelling or limitation to Robinson's range of motion. A.R. 17, 671. Robinson states that her symptoms were not always apparent on days when she had examinations scheduled, but that she has persistent inflammation on a daily basis. Pl.'s Mot. 7. However, Robinson does not explain how the ALJ's discussion of Dr. Padula's treatment notes constituted error. Dr. Padula consistently diagnosed Robinson with rheumatoid arthritis, a diagnosis that the ALJ endorsed by finding rheumatoid arthritis to be one of Robinson's severe impairments.

Finally, although it is not clearly stated, Robinson appears to dispute Dr. Cruz's opinion

14

that the record did not support a finding that her impairments met or equaled a listing. Pl.'s Mot. 5. According to Robinson, rheumatoid arthritis "requires persistent inflammation in joints" and she receives joint injections. *Id*. at 7. Dr. Cruz reviewed the entire record and noted that examinations had revealed mild synovitis, but that several imaging studies had "failed to reveal any significant joint erosions, destruction, or deformities." He cited evidence that noted no joint deformities and negative images of the feet, and opined that the medical evidence did not demonstrate that Robinson met or equaled the inflammatory arthritis listing. A.R. 704. Robinson does not identify any evidence in the record that contradicts Dr. Cruz's opinion or which would support a finding that she met any listing. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimants bear the burden of proving the existence of an impairment that meets or equals the criteria of a listing).

In sum, the court finds that the ALJ did not err in relying on the opinions of Drs. Glantz and Cruz in assessing Robinson's RFC.

### A. The ALJ's Credibility Determination

Robinson next challenges the ALJ's decision to discount her subjective complaints of pain.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Robinson's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations. However, [Robinson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." A.R. 15. Since the ALJ did not find that Robinson was a malingerer, he was required to provide "specific, clear and convincing" reasons to discount her testimony.

Here, the ALJ offered several reasons to discount her testimony. Having carefully reviewed the ALJ's opinion and the record evidence, the court concludes that the ALJ's credibility determination satisfies the "specific, clear and convincing" standard. First, the ALJ noted that

diagnostic imaging and test results did not support a finding of disability. A.R. 15. Robinson's rheumatoid factor tests were abnormal in July and November 2012, and in March 2013, her rheumatoid factor was lower but still abnormal. A.R. 433. However, in May 2013, Robinson's wrist and feet x-rays were normal. A.R. 446-47 ("[n]o sign of significant inflammatory, metabolic, or degenerative arthritis of either hand or wrist"), 498-500. In February 2013, MRIs of Robinson's hands were negative for synovitis or findings consistent with rheumatoid arthritis. A.R. 637. In March 2014, MRIs of her hands were negative. A.R. 637. October 2014 x-rays of both hands did not show any bony abnormality, and both feet were normal. A.R. 649-651.

Next, the ALJ prefaced his discussion of Robinson's treatment notes by stating that "[a] preponderance of the evidence of record does not support a finding of disability." A.R. 15. He summarized the treatment notes from Drs. Bauman, Stone, Nishio, and Padula from 2013-2015. A.R. 15-17. The ALJ discussed the relatively few objective findings assessed by her treating physicians, including the fact that Robinson regularly had an elevated rheumatoid factor. He also noted the doctors' observations of Robinson's occasional mild synovitis and ongoing complaints of pain, as well as her response to medication. However, as discussed above, the treatment notes by Robinson's treating physicians contain very little by way of opinions or observations about Robinson's limitations. The ALJ also discussed the consultative examination performed by Dr. Glantz, including her diagnosis, observations, and assessment of Robinson's functional limitations. A.R. 16-17.

The ALJ also discussed Robinson's own reports of her activities of daily living. A.R. 16-17. The ALJ noted that Robinson reported to her doctor that pain medication helped her care for her daughter, do chores, and "get through the day." A.R. 17, 646, 648. The ALJ emphasized that in her January 2013 application for benefits, Robinson had *denied* that she needed help "in personal care, hygiene, or upkeep of [her] home." A.R. 17, 178. The ALJ also noted that in her October 2013 exertion questionnaire, Robinson reported that she engaged in a wide variety of household chores, including tasks such as "cleaning, washing, getting [herself] a bath [and] cooking," as well as getting her daughter ready for school and driving her to school. A.R. 17, 314. The ALJ noted that at her October 2014 examination with Dr. Glantz, Robinson acknowledged

17

that she does her own dressing, grooming, and showering, although she stated that her daughter helps her. A.R. 17, 638. Additionally, the ALJ noted the observations of a Social Security Administration claims representative at a February 2013 interview, who reported that he did not observe that Robinson had difficulty with sitting, standing, walking, using her hands, or any other listed functional abilities. A.R. 17-18, 280. The claims representative also observed that Robinson was "well groomed and neatly dressed." A.R. 18, 280.

In her motion, Robinson admits that she stated in her application for benefits that she did not need assistance with her "daily activities," but explains that she thought that if she was not able to "take care of [her] responsibilities as [a] parent and an adult" that her daughter might be taken away from her. Pl.'s Mot. 8. According to Robinson, she is "not capable of doing all of [her] responsibilities." *Id*. While the court is sympathetic to Robinson's concern about her daughter, the ALJ was entitled to consider the information before him based on Robinson's own testimony and her self-reports about her activities and abilities, along with the medical evidence, to assess Robinson's subjective pain and limitation testimony. *See* 20 C.F.R. §§ 404.1529, 416.929. Robinson also takes issue with the statement that she was "well groomed and neatly dressed," asserting that she tries to look presentable when she goes out in public. Pl.'s Mot. 8. However, Social Security regulations provide that the ALJ may properly consider observations by agency employees. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("We will consider . . . observations by our employees and other persons"). The ALJ's discussion of this point was part of his larger discussion about her activities of daily living. He considered that Robinson admitted that she had no problems with personal care or hygiene along with the fact that the claims representative observed that Robinson was "well groomed and neatly dressed," which supported his conclusion that her pain and symptoms are not as limiting as alleged.

Finally, the ALJ also explained that the fact that Robinson worked after her alleged disability onset date raised questions regarding her level of activity reported. A.R. 18. As the ALJ noted and Robinson admitted during the hearing, Robinson worked as a dog-sitter. A.R. 11, 18, 50-51. The fact that Robinson continued to work after her onset date undermines her subjective pain and limitation testimony.

In sum, the ALJ gave specific, clear and convincing reasons for discounting portions of Robinson's excess pain testimony, and those reasons were supported by substantial evidence. The court finds no error with respect to the ALJ's credibility assessment.[3]

## VII. CONCLUSION

For the foregoing reasons, Robinson's motion for summary judgment is denied. The Commissioner's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: May 15, 2018



Donna M. Ryu
United States Magistrate Judge

---

[3] In her reply brief, Robinson asserts that the Commissioner's motion includes factual errors, including statements that Robinson is a personal caregiver and attends the needs of her two young children. Reply 3. The court believes that the facts to which Robinson is referring are specific facts from other cases the Commissioner cited in her motion, and that the Commissioner was not arguing that those facts were true for Robinson. *See* Def.'s Opp'n at 10 (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) and *Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009)).